## SPECIFICATIONS ON BIDDING ON PUBLIC WORK MUST BE DEFINITE.

[Circuit Court of Cuyahoga County.]

### STATE, EX REL. SYLVESTER V. McMAHON, v. RICHARD J. McKENZIE ET AL.

Decided, January 14, 1907.

*Bids and Bidding—Specifications for Construction of a Court House—Definiteness as to Material—Monopoly in Varieties of Material—Items which Preclude Competition—Reservations to Meet such Expenditures—Constitutionality of the Court House Commission Act—Section 794.*

1. The provision in 97 O. L., 111, and 98 O. L., 53, requiring a judge or judges of the court of common pleas to appoint the four members of a court house commission (other than the county commissioners) and to fix their salaries does not render these acts unconstitutional in that legislative and executive powers are thereby conferred.

2. In inviting bids for a public building the building commission are without authority to require bidders to include in the total amount of their bids an arbitrary sum, which the commission reserves the right to expend at its discretion for particular items that are not of such a nature as to render competition at all admissible. But items of a necessarily non-competitive character may be contracted for without this procedure, and it is competent for the commission to reserve such items for further lawful action.

3. Before bids are invited for a public building, the commission having the matter in charge must make the specifications so definite and certain as to material as to leave no discretion with the commission in the acceptance of the lowest bid, and where the material is controlled by a patent or other monopoly, alternative varieties of material should be specified in order to open the way for actual competition.

HENRY, J.; MARVIN, J., and BURROWS, J. (sitting in place of Winch, J.), concur.

In this appeal it is sought to enjoin the Cuyahoga court house commission from entering into a contract with Andrew Dall & Son, for the construction of a court house in said county.

The first ground alleged is, that the acts under which this comsion is organized (97 O. L., 111; 98 O. L., 53; Rev. Stat., 794-1)

are unconstitutional, because they attempt to confer legislative and executive powers upon judicial officers, in requiring a judge or judges of the common pleas court to appoint and fix the salaries of the four members of the commission other than the county commissioners. This contention was not strenuously urged in argument before us, and if it were, we should be content with the views expressed by the learned judge in the opinion below, vindicating the constitutionality of these laws.

It is complained, secondly, that the commission's invitation for bids is fatally defective, in that it undertook to suppress competition as to the items of statuary, hardware, etc., by requiring all bidders to include in their total bids, arbitrary sums aggregating some $98,000 to cover these items, which amount, more or less, the commission reserves the right to expend at discretion therefor.

If this is a means of getting $98,000 out of the county treasury and into the commission's hands for future discretionary expenditure, it clearly has no warrant in law. If such is not its object, we see no reason for requiring this, or any other amount of money for these items to be included in the bids. The duties sought to be imposed upon the successful bidder, with respect to the items in question, ought not to require the cost thereof to be included in the bids of persons who in no event are to provide them. Such a procedure is both awkward and ambiguous.

There is nothing in Section 794, Revised Statutes, when properly interpreted, to prevent reserving these items for further lawful action by the commission in procuring them, in so far as their artistic character is such as to preclude their purchase by competitive bidding; for work of a necessarily non-competitive nature may, no doubt, be contracted for without that procedure. When, however, this characteristic inheres merely in the design, as distinguished from the final workmanship, the competitive principle applies to the latter, and must be followed. And this, we think, is peculiarly true of hardware to be specially designed for this structure, and perhaps also of certain other excepted items. In short, we hold, as hereinafter pointed out, that there must be competitive bidding in all cases when competition is at all admissible. And competition,

where it is admissible, can not, without plain necessity for postponement, be deferred to a date later than that upon the main contract in view of the provisions of Section 794, Revised Statutes. In construing, however, the specifications on which the proposed contract in this case must be founded, we are of the opinion that the sum of $98,000, to be included in the bids for these items, can not of itself operate as an appropriation of that amount, though in extending a new invitation for bids, the means employed for accomplishing the end in view, so far as that end is admissible, ought to be rid of any room for doubt or argument in this behalf.

It is further urged that the competition in this case was illusory and unlawful, because it reserved to the commission a discretion, after opening the bids, to determine which of the several kinds of material named in the specifications, to-wit, limestone, sandstone and granite, should, in fact, be used, and also because it impliedly reserved to the commission a further discretion after opening the bids and fixing upon one of these kinds of material, to select which of the several varieties of that material as specified by bidders, pursuant to requirement of the specifications, should likewise be used.

The commission, in the exercise of the discretion so reserved, has in fact, since the bids were opened, selected granite as the main material to be used, and, in undertaking to accept Andrew Dall & Sons' bid, has likewise selected that variety of granite known as Pink Milford, as the particular sort of granite to be used. There were bids filed and opened for each of the three kinds of material, limestone, sandstone and granite, respectively, but the lowest bid was not for granite. There were several bids for granite; but Andrew Dall & Sons' bid was not the lowest for that kind of material. There were several bids for Pink Milford granite, and Andrew Dall & Sons' bid was the lowest for that variety of granite. But the selection of granite as the kind of material and the selection of Pink Milford granite as the particular variety thereof, were not made until after the bids were opened. Is this procedure warranted by law?

Section 799, Revised Statutes, provides that contracts relating to public buildings "shall be awarded to, and made

with, the person or persons who offer to perform the labor and furnish the material at the lowest price.'' This section applies to aggregate bids of the sort here under consideration. Combinations of partial bids fall under the somewhat different provisions of Section 794, Revised Statutes.

It is objected, however, on behalf of the defendant, that Section 794, Revised Statutes, applies only to boards of county commissioners, and not to this building commission, composed, though it is, of four other members, in addition to the county commissioners.

Three cases are cited in support of this view, namely: *Wood Co. (Comrs.)* v. *Pargillis,* 10 C. C., 376, affirmed without report in *Wood Co. (Comrs.)* v. *Pargillis,* 53 Ohio St., 680; *State* v. *Marion Co. (Comrs.)*, 39 Ohio St., 188, and *Boren* v. *Darke Co. (Comrs.)*, 21 Ohio St., 311.

With regard to *Wood Co. (Comrs.)* v. *Pargillis, supra,* it is enough to say that the dictum therein, to the effect that certain of the sections of the Revised Statutes embraced in Chap. 1, title 6, entitled ''public buildings,'' being Sections 782 to 803, Revised Statutes, inclusive, are inapplicable to the proceedings of a special court house commission, was wholly unnecessary to the decision of that case, and no reason whatever is set forth in the opinion to justify the dictum in question.

With regard to *State* v. *Marion Co. (Comrs.)* and *Boren* v. *Darke Co. (Comrs.), supra,* it is true that they identify Sections 795 to 799, Revised Statutes, with corresponding sections of the act of April 27, 1869. (66 O. L., 53), which was plainly restricted in application to boards of county commissioners.

Section 794, Revised Statutes, of the same chapter is now, however, significant, as bearing upon the present scope and application of the subsequent sections. The last-named section opens with the words:

''When any board of commissioners, board of trustees, officers, or board of directors of the state, or of any county, township, city, town, village, school or road district of the state, or of any public institution belonging to the same, or any common council, or other municipal authority, who are now or at

any time shall be authorized to contract or engage for the erection, repair, alteration, or rebuilding of any state house, court house,'' etc.

These words seem broad enough to comprehend all public authorities, including this commission, unless otherwise expressly provided by law. The entire section is to be construed in connection with the following sections, and they with it. This seems to be the effect of the decisions in *State* v. *Marion Co.* (*Comrs.*), *supra,* which holds that:

''Section 794 provides for letting contracts, in certain cases and under certain conditions, to separate bidders representing different trades, in respect to which the provisions of that section, and not Section 799, apply. In all other cases the provisions of the latter section govern.''

The chapter of the Revised Statutes, entitled, ''public buildings,'' is thus designated manifestly to cover the entire subject, except where it is inconsistent with other express provisions of statute. The provisions regarding county buildings to be erected by the county commissioners are equally applicable to this commission, whose other members are acting with the county commissioners and performing the duties that were formerly imposed upon them alone. It is true that this commission may act affirmatively with the concurrence of but a minority of the county commissioners; but its votes and proceedings are by law required to be recorded upon the journal of the county commissioners, and it is acting for the county in a distinct but entirely similar organic capacity to that of the county commissioners themselves. It is not to be presumed that the larger and more responsible duties that called the commission into existence should be attended with an abolition of the safeguards provided by law for the conduct of smaller enterprises of precisely the same kind. Such is by no means the apparent intention of the Legislature, and the opposite construction, being at least permissible with respect to this section as now found in the codified laws, it must prevail.

It is objected further by the defendants that even if Section 799, Revised Statutes, applies, as we hold it does, still the

decided cases warrant the conclusion that there may be a reservation of the choice of materials until after the bids are opened, whereupon quality, as well as price, may be looked to in determining who is the lowest bidder. Particular reliance is placed on the decisions of the circuit, or Supreme Court, or both, in *Ampt* v. *Cincinnati*, 17 C. C., 516, affirmed, without report, in *Ampt* v. *Cincinnati*, 60 Ohio St., 621; *State* v. *Toledo* (*Bd. of Ed.*), 14 C. C., 15, and *Polhamus* v. *Board of Ed.*, 21 C. C., 257, 259.

But an examination of these cases shows that there was something essentially non-competitive, or but imperfectly competitive, in the subject-matter under consideration, in every instance, to-wit: a heating system, a fire proofing system, or a water works pumping system. In the case affirmed by the Supreme Court, without report, the statute under consideration required the letting of the contract to the "lowest and best bidder," and the procedure adopted, which reserved some discretion to the authorities inviting bids, was approved.

In the cases, *State* v. *Toledo* (*Bd. of Ed.*) and *Polhamus* v. *Board of Ed., supra,* the statute under consideration forbade acceptance of any collusive bid, and any but the "lowest responsible bid," and it was held—the nature of the subject-matters being at least partially non-competitive—that a discretion might properly be reserved and exercised.

Shall we allow these precedents to emasculate the statute? Shall we swing wide the door of official discretion which experience teaches is too often but another name for graft and corruption? No corruption is charged or indicated in this case. But we are asked so to construe this section as to make it easy for dishonest officials to defraud the tax-payer. Probably no statute, however skillfully framed or wisely construed, can wholly prevent dishonest officials from following their bent. But graft can be made by law more difficult and dangerous, and the courts must be alert so as to construe such laws as to give them the effect intended.

Even if the proposed construction of this law preserves the letter, it strangles the spirit and intent of it. Undoubtedly when the subject-matter is practically non-competitive under

the ordinary procedure, it is useless to pursue the letter of, that procedure, and if no really competitive procedure under the law can be devised, then there is nothing left but to abandon the principle in such cases, and procure the thing desired by direct negotiation, instead of competition.   To the few instances where this is absolutely the case, Section 799, Revised Statutes, and similar sections can not apply.   But the number of such instances must not be needlessly enlarged.   And when materials of common use in ordinary construction are needed, it is idle to say that they are non-competitive simply because it is possible to fix upon a variety of granite, or marble, that is produced in but one quarry, or a variety of wood or iron that is monopolized by a single dealer.   If such a monopoly is to be utilized at all, its attendant evils can be avoided or minimized only by specifying alternatives of the same quality, or of equal excellence, and by then awarding the contract to the lowest bidder.

Summarized, our understanding of the law is, that wherever public authorities are by law required in letting contracts for construction, to invite sealed bids and to let the contract to the "lowest bidder," it follows:

First.   That there must be opportunity afforded for *bona fide* competition wherever the nature of the construction makes it possible; and a specification of non-competitive workmanship or material is unlawful in every case where such specification can reasonably be avoided.

Second.   Upon the opening of the bids, the contract must be awarded to that bidder whose bid, without subsequent alteration or explanation, is, on its face, the lowest one that fulfills the terms of the invitation, unless all bids are rejected, or the nature of the subject-matter compels the exercise of discretion.

Third.   When the contemplated construction is essentially and absolutely non-competitive, because of its artistic nature, or is strictly monopolistic, because the function to be performed thereby is necessarily dependent upon a single means which is the subject of an exclusive patent, or franchise, or sole source of supply, then the principle of competition is, so far forth, inapplicable.

Fourth. When the contemplated construction is but imperfectly competitive, though not absolutely non-competitive, as where the function to be performed is dependent upon some one of various monopolistic means, the principle of competition, so far. as it can reasonably be made applicable, must be strictly pursued; but, in cases of that kind, after the application of the competitive principle has been exhausted, a sound discretion may then be exercised in choosing the most economical means, all things considered, among those that are offered.

Applying these principles to the concrete case before us, it comes to this:

If this commission determines to build of granite without more particular specifications of variety or quality, it must so determine before asking for bids, and then let the contract, if at all, to the lowest bidder who comes within the specifications. If it determines to build of Pink Milford granite, it must likewise so determine beforehand. But if Pink Milford granite is a monopoly, so that specifying that material alone precludes competition, then it should specify a sufficient number of alternative varieties, by name or fixed standard of quality, so that there may be actual competition, and then it should award the contract to the lowest bidder who comes within such specifications.

In the matter of general materials for a public building, no discretion as to the choice can lawfully be reserved until after the bids are opened, when the statute expressly requires, as it does here, that specifications should be made in advance, and that the contract should be let to the lowest bidder. To hold otherwise would be to strike at the very root and foundation of these requirements of the statute. For if the law does not apply in letter and spirit to gross raw materials like these, what is left? The law forthwith becomes a dead letter. But it is said that we held otherwise in *Emmert* v. *Elyria*, 6 C. C. —N. S., 381; and that the Supreme Court affirmed that decision in *Emmert* v. *Elyria*, 74 Ohio St., 185. But an examination of that case will show that the point specially urged there was not suppression of competition, but the delegation by the council of its legislative power to an executive board. And though

the opinions of both courts do incidently refer to the merits of a procedure like that here adopted in stimulating competition when honestly pursued, yet the endorsement thereof by this court really turned on a curative act whereby the Legislature had set the seal of its approval on this practice, as applied to street improvements.  And the exact point here in question was not before the Supreme Court at all, in view of the findings of fact there considered.  For aught there appearing the choice of materials may in fact have been determined before bids were invited.

This case, and those before cited, have, indeed, given us pause. But we hold that the reservation, by the commission, of the right to determine, after opening the bids, the materials to be used in constructing the Cuyahoga county court house is unwarranted and illegal.  On the remaining point we entertain, if possible, even less doubt.  For though the same difficulty arises with respect to the discretion reserved in the choice of the varieties of marble to be used for floors and other interior work, there is, in addition thereto, another irregularity.  The successful bidder filed with his bid certain specimens of marble, as he was required to do.  After the bids were opened, he and the other bidders were permitted to designate further specimens of marble as those which they were willing to use.  Under circumstances which must have led Andrew Dall & Sons' representative to believe that he was thus designating the specimen chosen by the commission, although no such choice had then been formally made, he picked out a specimen of marble differing from many that his firm had filed, and upon the specimen thus designated, it is proposed now to enter into the contract here sought to be enjoined.

In *Herrmann* v. *State*, 11 C. C., 503, this exact procedure is condemned, and it is held in *Beaver* v. *Institution for Blind*, 19 Ohio St., 97, that amendments and alterations of bids after the same are opened can not be permitted.  And because it was permitted in this case—for we can not come to any other conclusion from the evidence—as well as because the commission reserved the choice of materials until after the bids were opened, the proposed contract must be permanently enjoined.

Our brother Burrows, who sat in place of our brother Winch, is of opinion that the requirement of a corporate surety on the successful bidder's bond was unauthorized and oppressive; that the size and duration of the bond after completion of the contract are likewise unreasonable, and that the provision in regard to the monumental character of the building is indefinite and hence a deterrent to fair competition. But we do not found our judgment on these grounds.

*B. C. Starr,* for plaintiff.

*C. W. Slage,* for defendants.